UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL L LACEY,

                Plaintiff,          CIVIL ACTION NO. 12-CV-13039

     vs.

                            DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Lacey seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 18). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

## I.    RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 18) be GRANTED.

## II.    PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of June 14, 2008 alleging that she had been disabled since March 1, 2002, due to various mental and

physical impairments.  (TR 15.)  The Social Security Administration denied benefits.  (TR 15.)

Plaintiff requested a *de novo* hearing, which was held on October 1, 2010, before Administrative

Law Judge (ALJ) Richard P. Gartner, who subsequently found that Plaintiff was not entitled to

benefits because she was capable of performing a significant number of jobs in the national

economy.  (TR 23-24.)  The Appeals Council declined to review the ALJ's decision (TR 1), and

Plaintiff commenced the instant action for judicial review.  Plaintiff and Defendant each filed their

Motions for Summary Judgment.

## III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff was 53 years old at the time of the administrative hearing and 45 years old at the

time of alleged onset.  (*See* TR 32.)  Plaintiff has a high school education and past work experience

as a production worker and as a secretary.  (TR 35-36, 37-38.)  Plaintiff indicated that her

employment was terminated due to several stress leaves and that she had not worked since 2002 due

to depression, anxiety, a bad back, and bad knees.  (TR 38-39.)  Plaintiff testified that she lived in

a house with her husband. (TR 32.)

Plaintiff testified that she attended physical therapy for her back pain but never had surgery.

(TR 40.)  Plaintiff indicated that she had a meniscus tear in her left knee but, once again, never

received any surgery.  (TR. 40-41.)  She also indicated that going up and down the stairs was

difficult and that she elevated her legs to help with the pain in her knees.  (TR 41.)  Plaintiff testified

that she did the laundry in the basement and that she was unable to handle big bags of pet food.  (TR

42, 43-44.)  Plaintiff indicated that she was no longer able to garden or fish on camping trips.  (TR

44.)

Plaintiff testified that, leading up to the hearing, her anxiety came on more frequently and for absolutely no reason. (TR 48.) Plaintiff also testified that when she hyperventilated, she would get chest pains and headaches. (TR 48.) She indicated that her anxiety attacks lasted from fifteen to thirty minutes, resulting in exhaustion, and that she took medication three or more times a day for these anxiety attacks. (TR 48, 49.) Plaintiff testified that her anxiety attacks were triggered by thunderstorms, high winds, loud noises, and crowded areas and that her depression stemmed from her anxiety. (TR 50, 53.) Plaintiff indicated that she contemplated suicide twice in the past and that her depression would force her to spend the day in bed roughly six times a month. (TR 53, 54.)

## B.    Medical Record

Defendant asserts that "[t]he ALJ offers a full discussion of the relevant evidence in this case" and does not set forth a factual account contrary to that which is presented by Plaintiff. (Docket no. 18 at 8.) The Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion and in Plaintiff's brief in support of her Motion.[1] (TR 17-23; Docket no. 12 at 6-8.) Because Defendant does not challenge Plaintiff's account of the record, the Court has reviewed Plaintiff's medical records and will incorporate citations as necessary throughout this Report and Recommendation.

---

[1] Plaintiff, in support of her Motion, provided the testimony her counselor, Nancy Armbruster. (Docket no. 12 at 13.) Ms. Armbruster submitted an RFC evaluation indicating that Plaintiff displayed, among other things, "continued stress and anxiety" and would be unable to function in a normal work environment. (*Id.* at 13-14.) As Defendant notes, Plaintiff did not provide this evidence until *after* the ALJ rendered a decision. (Docket no. 18 at 14.) "Judicial review of the Commissioner's final decision is based only on the evidence of record compiled by the Agency and before the ALJ at the time of his decision." (*Id.*, citing *Matthews v. Weber*, 423 U.S. 261, 270 (1976). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Plaintiff has not provided good cause for failing to present Ms. Armbruster's testimony to the ALJ. Therefore, the Court will not consider this new evidence.

**C.       The Vocational Expert**

The VE testified that Plaintiff had past work experience as (1) a foam machine operator, which she classified as unskilled, medium work as performed by Plaintiff; (2) a packer, which she classified as medium work as performed by Plaintiff; (3) a secretary, which she classified as sedentary work as performed by the Plaintiff; and (4) a home care provider, which she classified as semiskilled, medium work as performed by Plaintiff.  (TR 56.)  The ALJ asked the VE to consider an individual who (1) was of the same age, education, and past work experience as Plaintiff; (2) was limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs; (3) must avoid climbing ladders, ropes, and scaffolds; (4) was limited to occasional pushing and pulling with the lower left and right extremities to include the operation of foot pedals; (5) was limited to occupations that do not require exposure to dangerous machinery and unprotected heights; (6) was limited to simple routine repetitive tasks not performed in a fast-paced production environment; (7) and was involved in only simple work-related decisions and in general, relatively few work place changes.  (TR 57.)

The VE testified that such a person could not perform Plaintiff's past relevant work but that there were jobs in the Lower Peninsula of Michigan for such an individual.  (TR 58.)  Specifically, the VE testified that there are 5,600 jobs available as a janitor, which is generally unskilled, medium work; 8,490 jobs available as a housekeeper, which is considered light, unskilled work; and 4,500 jobs available as a hand packer, which is also light, unskilled work.  (TR 58.)  The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT).  (TR 59.)

With regard to a full-time work schedule, the ALJ asked the VE about the expectations of employers in terms of absences from work, time on task, break periods, and meal periods.  (TR. 59.)  The VE testified that time on task would be 85%, breaks would be 15 minutes morning and

afternoon including a lunch break of 30 to 60 minutes, and there is a maximum of two days per month in absences. (TR 59.) The ALJ inquired into the danger of Plaintiff being off-task 25% of the time. (TR 59.) The VE testified that this would be work preclusive in both skilled and unskilled positions. (TR 59.) Plaintiff's attorney asked the VE if there would be any effect on the listed jobs if Plaintiff was forced to elevate her legs through the course of the day. (TR 60.) The VE concluded that such a limitation would be work preclusive. (TR 60.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through September 30, 2007, had not engaged in substantial gainful activity since March 1, 2002, and suffered from major depression disorder, panic disorder with agoraphobia, anxiety, hypertension, lumbar spine arthritis, hyperlipidemia, and left knee osteoarthritis with meniscus tear, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 17-18.) The ALJ concluded that through the date last insured, Plaintiff was limited to postural maneuvers, such as balancing, stopping, kneeling, crouching, crawling, or climbing ramps or stairs, but must avoid climbing ladders, ropes, or scaffolds. (TR 20.) The ALJ also concluded that Plaintiff was limited to occasional pushing or pulling with the lower left or right extremities, including the operation of foot pedals, but limited to occupations that do not require exposure to dangerous machinery or unprotected heights. (TR 20.) The ALJ determined that Plaintiff was limited to simple, routine, repetitive tasks, not performed in a fast-paced environment, involving only simple, work-related decisions, and in general, relatively few work place changes. (TR 20.) The ALJ also determined that Plaintiff was limited to occasional interaction with supervisors or co-workers and must avoid all interaction with the general public. (TR 20.)

While noting that he gave Plaintiff the benefit of the doubt, the ALJ determined that neither the objective evidence of record nor the Plaintiff's own reported statements or activities could reasonably support a conclusion that she was unable to perform any substantial gainful activity. (TR 22.) Based on this assessment, the ALJ concluded that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act through September 30, 2007, the last date insured. (TR 24.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that Defendant's decision should reversed or remanded under sentence four for the following reasons: (1) the ALJ erred in the assessment of Plaintiff's mental limitations and failed to give proper weight to Plaintiff's treating medical providers; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ erroneously found work at Step 5. (*See* docket no. 12.)

### 1. Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*,

499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.  20 C.F.R. § 404.1527(c)(1).  The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.  20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.  *Wilson*, 378 F.3d at 544 (citation omitted).  Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.  Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ to give less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) if the ALJ provides "good reason" for the decision.  *See Infantado v. Astrue*, 263

Fed.Appx. 469, 473-74 (6th Cir.2008).  There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).  *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).  Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Plaintiff asserts that the ALJ erred (1) when he failed to give proper weight to Dr. Choi's assessment; (2) when he failed to properly account for Plaintiff's GAF score; (3) when he failed to give weight to the opinion of Ms. Armbruster; and (4) when he substituted his own medical opinion for those of medical providers.  (Docket no. 12 at 11-15.)  Defendant argues that (1) the ALJ reasonably discounted Dr. Choi's opinion; (2) the ALJ properly accounted for Plaintiff's GAF score; and (3) Ms. Armbruster's opinion is not part of the record and, therefore, cannot be considered by the ALJ.  (Docket no. 18 at 9-14.)

### a.      Dr. Choi's Opinion

The ALJ gave Dr. Choi's opinion "little weight" because his "it is inconsistent with his medical notes and the years of treatment records regarding the claimant's condition." (TR 21.)  In his discussion of Dr. Choi's opinion, the ALJ noted that medication was helping Plaintiff with her anxiety and panic attacks. (TR 21.)  Further, the ALJ noted that Dr. Choi's assessment revealed that

Plaintiff's condition would "frequently interfere with [Plaintiff's] attention and concentration needed to perform even simple work tasks**,** and that [Plaintiff] was incapable of even 'low stress' jobs." (TR 21.)  Finally, the ALJ found that Dr. Choi's assessment indicated that "[Plaintiff's] impairments would likely produce 'good days' and 'bad days.'" (TR 21.)  Plaintiff contends that the ALJ's decision represents a "mischaracterization of the medical evidence of record," and asserts that she complained of depression and anxiety at every appointment with Dr. Choi. (Docket no. 12 at 12.)  Defendant contends that Dr. Choi primarily treated Plaintiff for her physical impairments and noted no medical problems pertaining to mental instability.  (Docket no. 18 at 13.)  However, Defendant admits that Dr. Choi diagnosed Plaintiff with depression and anxiety but contends that Plaintiff was treated for such impairments without any further suggestion that Plaintiff's mental impairments would cause any specific functional limitations.  (*Id.*)

The record indicates that the ALJ reasonably considered the medical evidence presented by Dr. Choi.  In his assessment, the ALJ considered Plaintiff's yearly physical examinations with Dr. Choi.  (TR 20.)   The ALJ also considered the physical residual functional capacity assessment report of Dr. Choi, which indicated no functional limitations with regard to Plaintiff.  (TR 20.)  Further, the ALJ provided a good reason for attaching "[l]ittle weight" to Dr. Choi's assessment when he determined that it was inconsistent with Dr. Choi's medical notes and the years of treatment records regarding the Plaintiff's condition.  (TR 21.)  The ALJ relied on substantial evidence in affording little weight to Dr. Choi's assessment, and, therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

### b.    Dr. Goergen's Opinion

Plaintiff contends that Dr. Goergen's assessment was not properly addressed in the ALJ's opinion, and the ALJ only accounted for only a small portion of the medical evidence.  (Docket no.

12 at 14.)  According to Plaintiff, her "inability to focus on tasks or concentrate" and her inability to handle stress and changes were the only two things considered by the ALJ.  (*Id.*)  Plaintiff also argues that the ALJ failed to discuss Plaintiff's GAF score.  (*Id.*)  However, Plaintiff's claims are without merit.  In his assessment, the ALJ discussed Dr. Goergen's assessment in great detail.  Specifically, the ALJ noted that Dr. Goergen's assessment revealed Plaintiff's fear of crowds, depression disorder, and panic disorder with agoraphobia.  (TR 19.)  Contrary to Plaintiff's contention, the ALJ noted Plaintiff's GAF score of 43, which reflects serious symptoms or any serious impairment in social, occupational, or school functioning.  (TR 19.)  The ALJ considered this GAF score in light of a February 13, 2010 mental status evaluation report that indicated a GAF score of 65.  (TR 20.)  A GAF score of 65 reflects an individual who possesses mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions pretty well with some meaningful interpersonal relationships. (TR 20.) Therefore, the ALJ relied on substantial evidence that did not consist of "picking and choosing" as Plaintiff suggests, and therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 2.    Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR

96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff first asserts that the ALJ failed to fully account for Plaintiff's subjective complaints of pain. (Docket no. 12 at 16.) Plaintiff also contends that the ALJ improperly used Plaintiff's daily activities in an attempt to undermine her credibility. (*Id.* at 18.) Defendant argues that the "ALJ gave a reasonable explanation based on relevant factors for discounting Plaintiff's credibility and his explanation was supported by substantial evidence." (Docket no.18 at 15-16.) Defendant also contends that the ALJ reasonably considered Plaintiff's activities of daily living in evaluating her credibility. (*Id.* at 17.)

In assessing Plaintiff's credibility, the ALJ found as follows:

> The undersigned considered the credibility of the claimant's allegations and notes that the claimant had described daily activities, which were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. The claimant reported e-mail activities during the day. She would perform household chores, including laundry for four hours, cleaning for three hours, and feeding the cats and dogs. She would make dinner at times. She could perform personal care and grooming. She could prepare complete meals for about four days a week for one hour each. She would sometimes do yard work of weeding for two hours. She would prepare a "to do" list to keep herself motivated. Although afraid, she would drive alone and shop for food and staple items once a week for two hours each. She could manage money. She would read books and watch television even with concentration issues. She would interact with others over the telephone and computer on a daily basis. She could follow written instructions well, but not as much with spoken instructions. Clearly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity.

(TR 21 (citations omitted).)

The Court finds that the ALJ did not err in his assessment of Plaintiff's credibility. The ALJ specifically considered Plaintiff's testimony regarding her subjective complaints of pain, he discussed the Plaintiff's daily activities, he noted inconsistency with Dr. Choi's report, and he evaluated the objective medical evidence. Moreover, the ALJ gave some weight to a social worker's mental status evaluation report which indicated that "[Plaintiff's] behavior was appropriate, her motor was stable, her conversation was rational, and her affect was appropriate." (TR 20.) Further, the ALJ noted a recent physical examination that said Plaintiff's "hyperlipidemia was being treated with medication, and her hypertension was under control with medication." (TR 21.) Finally, the ALJ noted that her depression was being treated with medication, which allowed her to function with activities of daily living. (TR 21.) Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and the Court the weight given to Plaintiff's statements and the ALJ's reasons for that weight. The ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the severity of her symptoms and the impact of those symptoms were not entirely credible. Therefore,

even if the Court disagrees with the ALJ, his determination is supported by substantial evidence, and therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 3.     The ALJ's Step-Five Determination

Plaintiff argues that the ALJ's Step-Five determination was improper because it was unsupported by the weight of the evidence. (Docket no. 12 at 18.) Specifically, Plaintiff alleges that (1) the ALJ's own findings of moderate difficulties in concentration, persistence, or pace were not adequately accounted for, (2) the ALJ erred in determining that Plaintiff could perform a highly restricted range of light work, and (3) the ALJ's Step-Five finding conflicts with the vocational expert's testimony at the hearing. (Docket no. 12 at 19-22.) Defendant argues that (1) the ALJ reasonably reviewed the evidence and properly accounted for all of Plaintiff's complaints in his RFC assessment, (2) the ALJ's assessment is consistent with the vocational expert's testimony, and (3) Plaintiff's representative had an opportunity to question the VE with regard to any conflicts and chose not to do so. (Docket no. 18 at 18-19.)

### a.     Concentration, Persistence, or Pace

Plaintiff asserts that the ALJ limited the RFC to work involving "simple routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes," and did not factor in his own finding of Plaintiff's moderate difficulties in concentration, persistence, or pace. (Docket no. 12 at 19.) Plaintiff contends that the ALJ cannot substitute these limitations in place of limitations of concentration. (*Id.*)

Moderate limitations in concentration, persistence, and pace must be conveyed to the VE through the ALJ's hypothetical, or the VE's responses are insufficient to provide support for the ALJ's decision. *Edwards v. Comm'r*, 383 F.Supp.2d 920, 930-31 (E.D. Mich 2005). A hypothetical

that includes "simple, routine, unskilled work" is not, by itself, sufficient to frame a moderate limitation in concentration, persistence, and pace. *See id.* Such a limitation impacts a claimant's ability to meet quotas, stay alert, or work at a consistent pace even when performing simple, routine, unskilled jobs. *Id.* at 930. But there is no requirement that the ALJ specifically state that the claimant is "limited in concentration, persistence, or pace." *See Lewicki v. Comm'r*, No. 09-11844, 2010 WL 3905375, *3 (E.D. Mich. Sept. 30, 2010). The ALJ must create a hypothetical based on the facts of each individual case. *See id.*

In Step 3 of the sequential process, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] had moderate difficulties." (TR 18.) The ALJ concluded that he gave Dr. Choi's assessment "little weight," which implies that he based his determination, at least in part, on the portion of the opinion that the ALJ discussed in his Step 5 determination:

> [Dr. Goergen] reported the inability [of Plaintiff] to focus on tasks for employment and panic and anxiety attacks. [Plaintiff] had fear of people getting to close to her and was accompanied outside by her husband or another trusted individual. [Plaintiff] reported that she had depression. Dr. Goergen diagnosed [Plaintiff] with panic disorder with agoraphobia and major depression disorder, recurrent, in partial remission. [Plaintiff had a score of 43 on the Global Assessment Functioning (GAF) Scale.

(TR 19 (citations omitted).)

The hypothetical that the ALJ presented to the VE limited Plaintiff's RFC to "simple routine repetitive tasks not performed in a fast-paced production environment, involving only simple work-related decisions and in general, relatively few work place changes, limited to occasional interaction with supervisors and coworkers and must avoid all interaction with the general public." The ALJ took into account the facts of this particular case and accounted for any limitations in concentration, persistence, or pace. The ALJ considered Plaintiff's alleged difficulties in interacting with people in light of mental reports indicating that Plaintiff had only mild difficulty in social, occupational,

or school functioning. (TR 20.) Moreover, it appears that the ALJ also considered Plaintiff's improving mental and physical condition in his RFC assessment. (TR 20-21.) Plaintiff further asserts that the ALJ failed to take into account Plaintiff's fear of leaving her home. (Docket no. 12 at 19.) However, the ALJ discussed that Plaintiff, "[a]lthough afraid, would drive alone and shop for food and staple items once a week for two hours each," thus reflecting Plaintiff's ability to leave the home for hours at a time. (TR 21.) The Court finds that the ALJ relied on substantial evidence in his determination, and therefore, the Court should deny Plaintiff's Motion with regard to this issue.

### b.    Plaintiff's Performance of a Highly Restricted Range of Light Work

The ALJ determined that Plaintiff was able to perform a light range of work as defined under Social Security regulations. Plaintiff contends that the medical evidence supporting her physical limitations of knee and back pain prevent her from conducting "light work." (Docket no. 12 at 20.) Specifically, Plaintiff points to the arthritis in her knees, a tear in her left knee, and patellar maltracking in her right knee. (*Id.*) Further, Plaintiff claims that she has to elevate her legs during the day to alleviate the pain. (*Id.*) According to 20 C.F.R. § 404.1567,

> "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range light work, you must have the ability to do substantially all of these activities." (*Id.*)

Defendant contends that Plaintiff does not cite any medical or other evidence to support such a restriction. (Docket no. 18 at 18.) The undersigned agrees with Defendant as no doctor ever suggested that Plaintiff's legs would need to be elevated. Instead, the limitation appears to be based solely on Plaintiff's own testimony, which the ALJ did not find wholly credible. Moreover, the ALJ

considered Plaintiff's medical reports, which indicated that her symptoms with her left knee were "significantly" improving, and that given this improvement, there was no reason for operative intervention. (TR 20.) Finally, the ALJ factored in Dr. Choi's physical RFC assessment report, which reflected no functional limitations. (TR 20.) The ALJ considered all the relevant evidence in his assessment that Plaintiff was able to conduct "light work," and therefore, the Court should deny Plaintiff's Motion with regard to this issue.

### c.      Consistency of the ALJ's and Vocational Expert's Assessments

Plaintiff asserts that the ALJ's Step-Five finding regarding employment is inconsistent with the VE's testimony. (Docket no. 12 at 21.) Specifically, Plaintiff contends that the ALJ's finding of work as a package clerk constitutes a reversible error because it is inconsistent with the VE's testimony. (*Id.* at 22) Moreover, Plaintiff claims that the two remaining jobs that the ALJ adopted are precluded upon examination. (*Id.*)

During the hearing, the ALJ presented a hypothetical to the VE to determine Plaintiff's potential employment opportunities. (TR 57.) The VE testified that the Plaintiff could work as a janitor, a housekeeper, or a hand packer. (TR 58.) As Defendant argues, the ALJ mistakenly substituted a "package clerk" position in place of a "janitor" position in his finding. (TR 23.) However, the record indicates that the ALJ acknowledged the VE's finding of a janitor position during the VE's examination. (TR 58.) In his decision, the ALJ included the proper DOT number as well as the proper number of available janitorial positions. (TR 23.) Therefore, the ALJ's misstatement of fact does not constitute reversible error.

Further, the VE specifically testified that the Plaintiff could perform unskilled work at the light exertional level as either a housekeeper or a hand packer. (TR 58-59.) The VE relied on the ALJ's hypothetical, which took into account Plaintiff's physical and mental limitations. More

importantly, "[t]he function of the VE is to advise the ALJ of jobs found among various categories of employment which the plaintiff can perform with her limitations.  The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009).  Plaintiff blindly asserts that both remaining positions conflict with the production-paced preclusion but provides nothing to substantiate these claims. (Docket no. 12 at 22.)  Therefore, the VE found suitable work for Plaintiff, and the ALJ ruled appropriately.

As noted by Defendant, Plaintiff and his representative had a full and fair opportunity to cross examine the VE, and Plaintiff's representative did so on other issues.  The ALJ did not err by failing to expand on that cross examination.  While it is the ALJ's responsibility to "investigate the facts and develop arguments both for an against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 111 (2000), Plaintiff has provided no reason that the ALJ should have assumed the VE's testimony was inaccurate or untruthful.  Further, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2009).  Therefore, the Court recommends denying Plaintiff's Motion in this regard.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 12) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 18) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 5, 2013          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

### **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 5, 2013          s/ Lisa C. Bartlett
                               Case Manager